ALBANY,
1804.

Thos. Waters
and others,
v.
John Stewart.

</div>

John G. Leake and Bernardus
    Swartwout, junior,     } *Appellants,*

And Melancton L. Woolsey, Nathaniel Platt, Robert Cochran, Jonas Platt, Zephaniah Platt, John Bailey, James Kent, William Bailey, James Bailey, and George Ker,     } *Respondents.*

ON appeal from chancery, the case was this : The respondents, excepting Ker, had purchased of one Coll M'Gregor, a large tract of land in the county of Clinton, for the sum of £10,241 10s. Of this £2000 only being paid in cash, the residue was secured by a bond and mortgage from the purchasers, dated on the 24th of February, 1796, payable in four instalments; three of £2000, and the fourth of £2241 10s. the first on the 1st of June, 1798, without interest; the rest on the first days of June, '99, 1800, and 1801, with interest. At or about the time of executing this bond and mortgage, Ker,

<div style="text-align:right">

If one of many
joint mortgagors assign his
interest to a
third person,
who is accepted by the mortgagee in substitution of the
assignor, and
an indorsement be made
on the mortgage and bond,
that such third
person is ac-

</div>

L.

ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

cep'ed in lieu of the share the assignor holds in the bond, and is looked to for his proportion accordingly, the land will be exonerated from the proportion of the assignor, on his assignee giving bonds for the balance of an account between the mortgagee and the assignee, in which the assignee is debited for the amount of the proportion, provided it appear that those bonds have been satisfied, notwithstanding such satisfaction be under a settlement made after cancelling the original bonds of the assignee, by giving other securities, and at the time of giving the same, the assignee have notice of an assignment of the bond and mortgage by the mortgagor, made between the first and second settlements.

wishing to buy out the interest of Cochran, agreed with M'Gregor and Cochran, to be substituted in the place of Cochran with respect to his interest in the lands, and also with respect to his responsibility for the money secured to be paid by the mortgage. In consideration of being so substituted, Ker agreed to give Cochran £100 for his bargain, and to repay him his proportion of the £2000 cash, paid to M'Gregor, amounting to the sum of £200. In consequence of these arrangements, M'Gregor lent to Ker the £100 agreed by him to be paid to Cochran, and returned to Cochran the £200 received as his proportion of the £2000 paid down. A memorandum of the purpose with which these transactions were had, was made on the bond and mortgage in these words. " I ac- " knowledge and accept of George Ker, Esquire, in lieu of " the share which Robert Cochran holds in the within bond, " and look to said Ker for his proportions accordingly. New- " York, 24th of January, 1796." Cochran, on this, by the direction of Ker, conveyed his interest in the lands purchased of M'Gregor, consisting of one tenth, to Mrs. Ker. On the 25th of June, 1796, Coll M'Gregor settled an account with Ker, on the balance of which there appeared due from Ker £16,334. In this account M'Gregor debited Ker with £1100, for 2000 acres of land held with Platt and others. In satisfaction of the balance thus struck, and in pursuance of M'Gregor's desire, Ker gave his bond, (£3750 of which had been paid to one William Maxwell,) and for the residue the joint bond of himself and wife, payable one year after date, with interest at six per cent. to Isabella S. Fotheringham, between whom and M'Gregor a treaty of marriage at that time subsisted. Within two months after settling the above account in the antecedent manner, it appeared on a more accurate investigation, that some errors had crept in, which were by consent rectified, and by an indorsement on the last mentioned bond, the amount was reduced to £10,507 0 6d. On the 10th of November, 1796, the bond and mortgage from the respondents to M'Gregor, were assigned by him to the appellant Swartwout, in part payment for an estate. Of this assignment Ker had notice about the last of November, 1796. Swartwout owing a large debt to the other appellant Leake, in order to secure its payment, assigned to him the bond and mortgage from the respondents. From an answer of the respon-

dent Ker to a bill filed against him and others by the assignees of Coll M'Gregor, it appeared that in January, 1798, Coll M'Gregor, (between whom and Miss Fotheringham a coolness then subsisted,) demanded of Ker the bond which he and his wife had executed to her. In consequence of this, Ker obtained the bond from Miss Fotheringham, and carried it to M'Gregor, in whose presence it was, with his consent, cancelled and burnt. Shortly after this transaction, an account was again stated between M'Gregor and Ker, on which the latter was found indebted to the former £10,507, exclusive of a loan of $5000. In satisfaction of these sums, Ker, with the concurrence of M'Gregor, destroyed a declaration of trust from the latter, for township No. 28, in Jessup's patent. After this, the settlement thus made, was, at the request of M'Gregor, waved by Ker, who, having a bond and mortgage from one Hamilton and others to himself, assigned them over to M'Gregor in full of all demands. M'Gregor died since, insolvent. The bill below was against the respondents for payment of the debt of £8241 10s. with interest, or that they might be foreclosed. The Chancellor ordered that Cochran's one tenth should be considered as paid, and that it should be referred to the master to report, after deducting his one tenth, what was due on the mortgage; and that the same should be paid by the other original obligors. For this decree his Honor thus assigned his reasons:

Mr. President—In my opinion, the mortgage and bond, being the joint act of *all* the parties, could not, as far as respected their respective interests, receive a new modification without the consent of all. It was, however, competent to M'Gregor to receive the portions of one or more of the obligors, and to credit the amount paid, which tho' placed to the account of all the obligors as so much paid of the debt, generally, would, if the whole proportion of the person paying was satisfied, operate to discharge him in any action for contribution between themselves. The operation of *a release to one* of the parties to a joint contract, to discharge all is stricti juris; it is on the ground of a presumed satisfaction, and severance of contract which it implies. But though this is the doctrine of strict law, the same degree of rigour is not extended to devices calculated to produce the same effect in a more circuitous mode. So a covenant not to sue, cannot, it has

<div style="text-align:right">
ALBANY,<br>
1804.<br><br>
John G. Leake<br>
and<br>
B. Swartwout,<br>
v.<br>
M. L. Woolsey<br>
and others.<br><br>
1 Ld. Raym.<br>
265.
</div>

ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

been held, be taken advantage of at law, *by way of re-lease.* It is evidently in the power of a person holding a joint contract, so to direct a suit on it, as to charge only one or more of the joint contractors, and is every day's practice at law; and the only remedy of the persons against whom the recovery is had, is to enforce a contribution from their co-contractors, not affected by the recovery. If however those have already satisfied their full proportions, no injury having arisen to the persons subject to such recovery, there is no point on which they can rest their claim to contribution. If this may be done tacitly, I can discover no good reason why it should not be the legal object of a covenant indirectly to avoid a process for contribution. If the indorsement in this case, had acknowledged the receipt of a sum of money equal in amount to Cochran's one-tenth of the debt, it would not be deemed prejudicial to the interests of the co-obligors; and whether it was actually paid in money, or agreed to be credited, on an arrangement between them, to substitute some other object existing in property or contract, could be of no consequence to any others than those who were the parties to the transaction making such substitution. Assuming it then as legal, as well as equitable, in certain cases to permit the person complying with what is deemed his full proportion of duty on his contract, to be virtually, though not formally, discharged by the agency of the person with whom the joint contract is made, the next question is, What was the operation of the agreement in this instance? The indorsement both in the bond and mortgage is, " I acknowledge and accept of " George Ker in lieu of the share which Robert Cochran " holds in the within bond." This part of the agreement is inaccurate in its language: it speaks of acknowledging and accepting of Ker, *in lieu* of Cochran's share, which it is said *he holds* in the within bond; but however inapplicable the term *hold* may be, as descriptive of a duty, the former part of the sentence distinguishes, not the person of Ker, as instead of that of Cochran, but with precision, the acceptance of the person of Ker, in lieu of *the share* of Cochran; this is, in my opinion, a strong mark of the intent. There were ten obligors, and from the silence of the securities as to the inequality of interest, or obligation in discharge of the debt, I think it is a legal inference, that all were equally to contribute to its discharge;

there is no allegation of such inequality, and all the answers concur in representing the debt as an equal one on all the parties. If this is admitted, the share of Cochran was suscepti- ble of exact liquidation by a simple arithmetical process, which only was necessary to reduce it to certainty. If so, the *share of Cochran*, in language, is as little subject to doubt, as if the parties had expressed themselves in the more definite terms, of the precise number of dollars intended to be considered as satisfied; and, whether the acknowledgment was, that he had received a certain sum, or that he had made an arrangement to credit a certain sum, in consequence of Ker's responsibility to him, does not, in my opinion, materially vary the situation of the parties. In both cases, the other parties might be called upon to adjust the difference of payment by contribution, if in the event of a suit on the joint contract, an additional sum should be exacted from him, beyond his proportion. By way of fixing this intent more determinately, it is added, that *he looks* to said Ker for his proportion accordingly. This looking to Ker for his proportion of Cochran's, seems to be in pursuance of the same idea; not that he looked to Ker as a substitute in the contract for Cochran, but to Ker for the proportion of Cochran. Indeed, it can scarcely be presumed, that the parties could have supposed a complete substitution legally practicable; it could not have entered into their imagination, that Ker could be considered as a co-obligor with the others; and if not, the mortgage, being merely a collateral security for its discharge, must be considered as invalid to the amount of the satisfaction on the bond. I do not however mean to assert, that it was not in the power of the parties so to modify this transaction, as to retain the lien on the lands, and virtually to discharge the person of Cochran; yet that if this was done by way of release, it would, in legal operation, destroy the whole instrument, cannot be urged with effect against the mode adopted by the parties. The complainants received the bond and mortgage with the indorsement to them, calculated to disclose the nature of this transaction. Whatever might be the consideration or inducement as to Ker, the contract made with Cochran, and his parting with his share of the land to Ker's wife, was a sufficient consideration as to him; and whatever complexion the business might assume, as between *M'Gregor and Ker*, the

ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

right of creditors not being affected by it, it could have no retrospective effect, so as to avoid the contract made with Cochran. As between Cochran and M'Gregor it was conclusive, and it does not lie in the mouth of the complainants, now representing M'Gregor, to set up subsequent transactions, to which Cochran was a stranger, to impeach a bargain which he is interested in maintaining, nor ought they to be permitted to charge the other mortgagors with a sum of money, which the person from whom they derive their rights, has relinquished, as part of the money secured by this mortgage. It cannot therefore be necessary to trace the winding steps of M'Gregor, Ker, his wife, and Miss Fotheringham, detailed in the answers of the latter in another cause, which were used at the hearing; for all those relate to transactions subsequent to the agreement, in consequence of which the indorsement was made, and cannot possibly affect it. The letters of the several defendants are conceived in general terms, and nothing is to be collected from them prejudicial to their interests; for the expressions in these letters would equally apply to half, or a smaller portion of the money secured, if no more remained unpaid; but a better reason is, that supposing Cochran's share satisfied, no act of theirs, as against the other mortgagors, could place it in statu quo, nor could it possibly replace Cochran, as a party liable. And if not, it would certainly be very inequitable to compel them to pay his proportion, without a possibility of resorting to him for a contribution. From this train of reasoning, I am of opinion that Cochran's one-tenth must be considered as paid, and that it be referred to a master to report the sums due, rejecting the one-tenth.

Against this, the appellants contended, 1st, That whatever might be the effect of the agreement between M'Gregor, Cochran, and Ker, upon the bond, at all events, the land remained liable, as Ker took Cochran's conveyance, subject to the mortgage. 2d, That the settlement with M'Gregor, by Ker, was fraudulent, and after notice of his assignment, as was evident, 1st, from the non-production by M'Gregor of the bond and mortgage, at the time of this pretended settlement; and was in itself a sufficient reason to presume an assignment. 2d, From the known insolvency of M'Gregor. 3d, That allowing the first settlement to have been good, still, when the bond to Miss Fotheringham was given up and cancelled, it was

as if it had never been in existence, and then the subsequent settlement was clearly fraudulent, being after notice admitted.

ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

On behalf of the respondents it was insisted, That the words of the indorsement clearly exonerated the land from Cochran's proportion, M'Gregor having thereby accepted Ker as his debtor for that amount. That this was evident, 1st, From the account, in which Ker is charged £1100, for the land held by him, with Platt and others. 2d, The money due on the bond and mortgage, was not payable till the expiration of 2, 3, 4, and 5 years, but on the bond given by Ker it was due in one year. 3d, The return of the £200 to Cochran, evinced a new transaction, in which the original liability of Cochran was done away.

Harison for the appellants. It is contrary to reason, to suppose landed security should be relinquished for personal. The intention of the parties, from the words of the indorsement, was, that the person of Ker should be substituted for that of Cochran, but that the land should remain charged. The estate in it was vested in M'Gregor by the mortgage, and it could not be divested, without a compliance with the condition. It was impossible to effect this by the indorsement; for, nothing short of payment is a performance of the condition. The estate of the mortgagee, on executing the deed, passes out of the mortgagor, and upon common law principles, the mortgagee is seised of the fee, defeasible by performance of the condition. 1 Pow. on Mort. 226. If then the estate was in M'Gregor till performance of the condition, and that condition is now unperformed, the estate thus in him passed to his assignee, from whom we claim, and would be entitled, in an ejectment, to set up this our title. Co. Litt. 206 to 208, b. Till a reconveyance *, the legal estate remained in the mortgagee and his assignees. But it is contended, that the settlement made between Ker and M'Gregor, is equivalent to a payment pro tanto, and conclusive on the appellants. We insist, however, from the facts, that it appears Ker had notice of the assignment by M'Gregor, and that any payment afterwards made by Ker, was in his own wrong. In order to affect with notice, it is not necessary that it should be written †. If the circumstances be such as ought to induce an inference, that an assignment had been made, it is sufficient. The absence of the bond and mortgage, on the

* See ante page 59, note †.

† Whatever is sufficient to put the party on inquiry, is

ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

enough. Smith
v. Low, 1 Atk.
489. And if a
mortgagee be
affected with
notice, his as-
signee will
take subject to
it. Whalley
v. Whalley, 1
Vern. 484.

first pretended settlement, was equal to this. But on the se-
cond, when the first was cancelled, a new bond and new
modes of payment adopted, the notice is admitted. On this
point, therefore, if on no other, we conceive the decree must
be reversed.

Pendleton contra. It is needless to say any thing on the
necessity of a reconveyance, to revest the estate of the mort-
gagor. For what has been urged on that head, applies only
to cases where there has been a forfeiture, and the estate ren-
dered absolute in the mortgagee. Here, however, if the
estate is discharged from the tenth of the mortgage mo-
ney, it is by a payment made before forfeiture. The first in-
stalment on the bond was due in June, 1798. The most dis-
puted settlement by Ker, was in the January antecedent. But
the payment, as it in fact was, which then took place, was not
of the money due on the bond and mortgage. That had been,
as to Cochran and his substitute Ker, previously satisfied by
the bonds in June, 1796, at which time M'Gregor was owner
of both bond and mortgage. The transaction which then
took place was a complete act; and surely at that time he had
a right to take payment of his mortgage money in any way
he pleased. He did then, on that day, as appears from the
account in his own hand-writing, receive, in a manner point-
ed out by himself, payment of £1100 from Ker, for the 2000
acres of land, held by him with Piatt and others, the very
identical share of Cochran in the original purchase from
M'Gregor. The subsequent assignment to Swartwout could
never defeat this payment, thus fairly and fully made. After
this settlement, so perfected and carried into execution, whe-
ther the bond by which it was effected was destroyed, or in
whatever way satisfied, nothing which took place relating to it
could revive rights long previously exstinguished, and that in
favour of persons who then had none. By the words of the
indorsement, Ker was substituted for Cochran's portion in the
bond; for that portion the land was only a security; when,
therefore, that portion was paid by the bond to Maxwell
(which has been fully discharged) and the bond to Miss Fo-
theringham given for the collective debt of Ker, the land was
necessarily exonerated. In the indorsement, M'Gregor says
he looks to Ker. This is a strong declaration that he does
not look to the land. If so, it is a criterion on which the ex-

position of the indorsement is to be made. For in exposi-
tions, the intent is the governing principle. 3 Atk. 135 *.
And that the intent should be to look to the person of Ker, is
not so surprising, if we consider Ker's personal transactions
with M'Gregor then amounted to £16,000. Besides, there was
an inducement to accept Ker's personal security, and exonerate
the land. It accelerated the payment five years. The rate
of interest was altered from 7 to 6 per cent. How then could
land continue liable for a sum at seven per cent. when a bond
was given for the same sum at six? It is plain, that to obtain
payment at an early day, the land and one per cent. was given
up. To discharge land of a mortgage debt, any common pa-
rol declaration or discharge is sufficient. 1 Pow. on Mort. 187.
The indorsement therefore is adequate. Then, if the debt was
discharged, the land followed of course. Martin ex Dem.
Weston v. Mowlin, 2 Burr. 979. On this principle the doc-
trine of notice will apply most forcibly to the appellants. The
indorsement on the bond and mortgage purported an exone-
ration of the land, and the personal substitution of Ker. The
assignees, therefore, of such bond and mortgage, received
them after a full notice, written on the instruments. The sub-
sequent payment of a prior personal substitution for the share
of Cochran, could not revive those rights, which that personal
substitution, and the bonds thereon given, had extinguished.

Hamilton in reply. It is on that subsequent payment we
think we have a right to rely. When it was made, Ker had
full notice of the assignment to Swartwout. Instead of settling,
or paying as it is termed, he should have withheld, till con-
vinced that his payment would not prejudice the rights he
knew were transferred to Swartwout. Acting otherwise, evinc-
ed a spirit of favouritism. On the point of substitution by the
indorsement and conveyance, it must be held, that when Ker
took the estate and place of Cochran, he took them with all
the liabilities they were under, when held and occupied by
him, into whose shoes he stepped. If the payment of a pro-
portion of the mortgage by Cochran, would not extinguish in
M'Gregor the right to charge all the land with the residue, it
could not, when made by Ker, deprive him of it. Therefore,
allowing the substitution in the fullest extent, and the total
exoneration of Cochran, that was no discharge of the land.
All that can be effected by the payment of Ker, is a diminu-

M

*margin:*
ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

———————

* Smith v.
Parkhurst.

<div style="margin-left:note">ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.</div>

ion of the charge on the land, not a diminution of the land charged. If, by his proportion, continuing liable, he pays twice, that is a matter of contribution between him and his co-obligors, but nothing to us, who receive only our original sum. At law, the indorsement could never operate to discharge the person of Cochran; in equity, it might. But in equity it never would be considered as being a pro tanto discharge of the land from the mortgage. Therefore, though equity, perhaps, would not have allowed M'Gregor to proceed against the person of Cochran, it would have permitted a foreclosure against Cochran's share in the hands of Ker. If this would have been endured in M'Gregor, certainly in his assignee. The whole of the settlements relied on, are bonds for bonds, and therefore no payments. The facts, however, warrant a presumption, that the bond to Miss Fotheringham was in consideration of marriage, and as a portion; when the marriage did not take effect the consideration failed, and the money intended to be secured to Miss Fotheringham became due to M'Gregor, as his original property in the bond and mortgage. To pay money for that proportion of the bond and mortgage afterwards to M'Gregor, was to make a payment on that which Ker knew was assigned to the respondent Swartwout. It consequently was done in his own wrong, and we have a right to look for the whole amount from the persons bound, and all the land originally charged.

The majority of the court being of opinion with the Chancellor, for the reasons he assigned, it was ordered that the DECREE BE AFFIRMED.

Spencer, J. contra. The questions arising in this cause, are principally—1st. What is the legal effect of the indorsement made on the bond and mortgage, given to Coll M'Gregor by Robert Cochran and nine others, whereof Ker is not one, in these words, " I acknowledge and accept of George " Ker, Esq. in lieu of the share which Robert Cochran holds " in the within bond, and look to said Ker for his proportion " accordingly. New-York, 24th February, 1796?" 2d. Whether, from posterior transactions, the appellants have lost their right to insist on the mortgage as a security, as well for the nine-tenths, as for the one-tenth part of the money thereby secured, and due from Cochran, provided the above indorsement did not, in judgment of law, operate to discharge Coch-

ran's share due on the mortgage? I shall consider the first question independently of the alleged understanding of the parties. This, for three reasons—1st. Because this is not a controversy between the original parties to that transaction (M'Gregor and Ker), but between the assignee of he former and Ker. When this assignment was made to Swartwout, by M'Gregor, it was for the whole sum expressed in the mortgage. The indorsement, to be sure, was on it; and by the true exposition of that indorsement, was his interest and right acquired in it to be determined, without reference to any conception of the parties, as to the operation of that indorsement. 2d. Because parol evidence, substantially to vary or impugn an agreement in writing, even as between the same parties, cannot be admitted; much less between one of the parties and a third person, who has acquired a right under such agreement. 3d. Because, whatever M'Gregor might say in relation to his understanding of the intent and operation of the indorsement, ought not to be regarded; he having, for a full and valuable consideration, assigned the mortgage as due in toto; his subsequent declarations to the contrary, would evince that he had been guilty of a fraud in that assignment, and this would justly derogate from his testimony. If the rule, that, in assignments of choses in action, the assignee takes them subject to all the equity between the parties, does obtain upon the assignment of a mortgage, and of which perhaps there is doubt, still it cannot reach a case of this kind, where the parties wholly relied on a written stipulation, and must be bound by its construction. The indorsement will not admit of a literal construction. Cochran held no share in the bond, but was held by it to the payment of the sum expressed. M'Gregor accepted Ker in lieu of Cochran, in the within bond, and was to look to him for his proportion accordingly. It is to be recollected, that the indorsement was both on the bond and mortgage in the same words; and it is to be presumed, because universally the case, that the mortgage had reference to the bond; and no reason can be assigned why, when the indorsement was made on the mortgage, Ker should be accepted in lieu of Cochran, as to his liability on the bond only, if the parties had intended that M'Gregor was to renounce the real security he held. The expression of the one, is the exclusion of the other, especially when this indorsement is made on the mortgage, and refers

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

Morris & oth.
v. Ansell, 3
Will. 275. 3
Ves. J. 34. 2
Atk. 383. Ib.
558.

ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

to a bond. If collateral facts, existing at the time of the transaction, be resorted to, and if we are to imagine M'Gregor actuated by his interests, these considerations would unite in evincing that it could not have been his intention to wave the security he had, but merely to substitute Ker for Cochran, so far only as regarded personal responsibility. But in making up my opinion on this point, I put out of view these circumstances, and look to the words of the indorsement, as the only true indicia of the intention of the parties. The agreement only extends to the bond, and I cannot say, in contradiction to that, the parties meant the mortgage. Have subsequent transactions varied the case so far, as that either the debt has been forgiven, the bond discharged, as respected Cochran's proportion of the debt, or the mortgage reduced by as much as that proportion? The respondents rely much on the exhibition of an account by M'Gregor, against Ker, in June, 1796, wherein he charged the latter with Cochran's proportion of the bond and mortgage, and also upon the execution of a bond by Ker and his wife, to Miss Fotheringham, by the directions of M'Gregor, as a further security from Ker, for Cochran's proportion of the debt in the bond and mortgage, payable at a shorter period, and at a different rate of interest than was required by the bond and mortgage given by the respondents originally to M'Gregor. These transactions are relied on in two points' of view : first, as evidence that Cochran was discharged from his liability ; and, secondly, as an extinguishment of the debt so due from Cochran. As regards the first, I am clearly of opinion that the indorsement on the bond and mortgage did not, in law, exonerate Cochran from his liability. In the case of Rogers v. Payne, 2d Wil. 376, an action of covenant was brought for the non-payment of a sum of money, the defendant pleaded a discharge, in the nature of a release without deed, in satisfaction of all demands. Upon demurrer, it was objected for the plaintiff, that the plea was ill ; for that a covenant to pay money, which is by deed, cannot be discharged without deed, and of that opinion was the court, and gave judgment for the plaintiff. If, then, the indorsement only affected the bond, and if that could not, in law, be discharged without payment or release, it follows, that the indorsement can in no way have effect. As respects the extinguishment, nothing can be more clear or better settled, than that, to extinguish

Yelv. 192. 6
Rep. 44.
Blake's Case.
Cro. Jac. 254.

ALBANY,
1804.

John G. Leake
and
B. Swartwout,
v.
M. L. Woolsey
and others.

a debt, something of a higher nature than the debt to be extinguished must be given. To give one bond, for a debt secured by another, is no extinguishment. Had the bond given by Ker and wife to Miss Fotheringham been paid, the case indeed might have been materially changed; but after the assignment of the bond and mortgage by M'Gregor to Swartwout, and after notice from the latter to Ker, the bond to Miss Fotheringham was, at the instance of M'Gregor, given up, cancelled and burnt; and when Ker might and ought to have regarded the notice from Swartwout, that the whole mortgage was his, and he alone entitled to be paid, he proceeded to enter into other arrangements to pay M'Gregor; and now insists on such payment, made, as I conceive, in his own wrong. Had M'Gregor retained the bond given to Miss Fotheringham, after it was in his custody, and then insisted on Ker's providing differently for the payment of it, the case would have been very different from what it is; but that bond was destroyed, Ker then was at liberty to have refused paying M'Gregor by so much as the amount of Cochran's share came to; this he did not, though he had notice; but afterwards, at a different time, satisfied M'Gregor; first, by a sale to him of lands at 100 per cent. more than they cost him; and subsequently, by assigning another bond and mortgage. I have paid due attention to the authority cited by the respondents' counsel, and I agree with him, that a mortgage may be discharged by parol, or may be forgiven, because it is not a conveyance of land within the statute of frauds; but this mortgage has never been discharged, or forgiven, or paid, until after it was assigned. I agree further, that the payment of the money will draw the land after it, provided the payment be to the right party. A bond, however, cannot be so discharged. On the whole, it appears that the appellants or respondents must lose so much as the share of Cochran amounted to. The appellants gave a full consideration for the mortgage; the respondent Ker has paid to the amount of Cochran's share, but he so paid it to a person not having a right to receive it, with full notice not to pay him; he paid it, too, without any legal necessity, consequently he ought to pay it again, and to the right person. I am of opinion, that the decree ought to be reversed, and that the appellants be permitted to insist on a foreclosure, as well for the amount of Cochran's proportion of the debt, as the residue of the mortgage.